UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY MCKINNEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01838-TWP-DML |
| | ) | |
| DESHAUN ZATECKY, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on Petitioner Anthony McKinney's, Petition for Writ of Habeas Corpus. (Dkt. 1). Mr. McKinney, an inmate of the Indiana Department of Correction ("IDOC"), is challenging his prison disciplinary conviction in case number ISR 20-02-0066. For the reasons explained below, the petition is **GRANTED IN PART, AND DENIED IN PART**.

## I.    LEGAL STANDARD

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.
## BACKGROUND

On January 14, 2020, IDOC Investigator S. Wyatt wrote a Report of Conduct charging

Mr. McKinney with "Violation of any federal, state, or local law," a violation of IDOC Adult

Disciplinary Code A-100. Dkt. 7-1. He was accused of shoving an IDOC maintenance foreman

down a flight of stairs. *Id.* The Report of Conduct states:

> On 1/14/2020 at approx. 8:43am, maintenance foreman Scott Counceller was
> utilizing Offender Anthony McKinney DOC 142272 to help him carry a pressure
> washer down the stairs outside and behind the kitchen of OSD. Mr. Counceller told
> me, Investigator S. Wyatt, during an interview he was in the process of preparing
> to pressure wash the basement underneath the kitchen in OSD. He said he was
> carrying the pressure washer from the handle side of the unit walking backwards
> down the stairs and McKinney was carrying the other end walking forwards after
> him down the stairs. Counceller said McKinney asked him for five dollars so he
> could check the vending machines in OSD's visitor room area. Counceller said he
> told him no and McKinney got angry. Counceller said McKinney pushed him and
> the power washer down the stairs. He said he hit the back of his head either on the
> concrete ground or wall at the bottom of the stairwell and almost lost consciousness.
> Counceller was taken to St. Vincent's Hospital in Anderson, Indiana for evaluation
> and treatment.

*Id.*

On February 19, 2020, Mr. McKinney was notified of this charge when he received a copy

of the Screening Report. Dkt. 7-2. He pleaded not guilty and asked to call Offender Ted Vann and

Sgt. Miller as witnesses. *Id.* He also asked to present video evidence of the incident and stated that

he wanted "copies of everything he said." *Id.*

Officer McDonald and Officer Johnson each drafted a report summarizing Mr. McKinney's

statement at the time he received the Screening Report. Dkt. 7-6, pp. 2-3. Mr. McKinney told the

officers that he was restricted from going outside and that Offender Vann was supposed to help

Counceller carry the pressure washer outside. *Id.* He also told the officers that Counceller slipped

and fell descending the staircase. *Id.*

Offender Vann provided the following witness statement in response to Mr. McKinney's evidentiary request:

> I Teddy Vann worked for the officer that fell. McKinney told me he help[ed] my boss at the time carr[y] the pressure[e] washer and tools down the back stairs. And my boss slip[ped] and fell. I told McKinney to tell them the OSD staff to let me out to help my boss Scott Counceller with the pressure washing but they didn't let me. But McKinney stated to me he slip[ped] and fell.

Dkt. *Id.* at 1.

Sgt. Miller provided the following witness statement in response to Mr. McKinney's evidentiary request:

> About 8:48, Offender McKinney, Anthony #142272 came to the osd office and asked if Counceller needed anyone to help him wash the basement and said he helped him carry the equipment to the back kitchen door but did not go out of the door. I went to check on Counceller and found him at the bottom of the cement stairs outside of osd kitchen area on his back with the power washer laying across him and called a signal 3000 medical emergency to the area at 8:52am, picked the power washer up off of him and asked what happened. Once medical and first responders arrived, I secured Ofd. McKinney who was on the main floor, in the shakedown booth.

*Id.* at 4.

IDOC officials withheld the surveillance video of the incident for reasons of safety and security. Dkt. 7-4. Sgt. Cooke reviewed the video and drafted a report summarizing its contents. *Id.* The video shows Counceller and Mr. McKinney leave the kitchen area together at 8:38 a.m. on the date of the incident. *Id.* Counceller pulls the pressure washer and a box of tools behind him, and the two men walk together off-camera. *Id.* At 8:44 a.m., Mr. McKinney reappears on the video. *Id.* At 8:45 a.m., he approaches Sgt. Miller in the OSD office. *Id.* The two men interact several times over the next 10 minutes. *Id.* At 8:50 a.m., first responders arrive on scene. *Id.* at 8:54 a.m., Sgt. Miller secures Mr. McKinney in the shakedown room. *Id.* The Court has reviewed the video,

which the respondent has submitted as an ex parte exhibit, and finds that it is substantially similar

to the description provided by Sgt. Cooke. *See* dkt. 11.

On March 12, 2020, this matter proceeded to a disciplinary hearing. Dkt. 7-4.

Mr. McKinney provided the following statement in his defense:

> I filed a PREA on officer Patrick. Officer Patrick and (Maintenance worker) Counceller are best friends.
>
> So, they plotted against me because she was kicked out of OSD and the PREA came back as Unfounded.
>
> OSD commissary was in progress and I come down everyday to ask if they can use help. Counceller came to me and asked for assistance. I told him I was not allowed to go outside, and he said, "It don't matter." So, we went through the crowd of commissary and then went out the back door with the pressure washer. I asked him which side he wanted to carry down the steps and he grabbed the bottom and me the top. He then turned around and started walking backwards down the steps and stumbled twice, then fell down the steps. I never let go of the power washer, it was leaking gas though, and I asked if he wanted the power washer and to get help from Miller (Sergeant Miller). He said "No, ease it down and give me 15 minutes and I will be fine." He got up and leaned over. He laughed and said, "That was a fall!" So, I came back in. He got up, was sitting up and laughing.
>
> I then went to Vann (offender Vann 905742) and told him his boss fell down the stairs and Vann told me to go tell the police. So, I went to the police and told her (Unidentified) and she said "No, I am not getting anyone else out!" So, I went to Sg[t]. Miller and told him, and he did not believe me so he said he "would go talk to him." And that's when he went to go talk to Counceller.
>
> I am 1R (Restriction level in OSD) and not allowed outside so why would I ask to help Counceller if I know I am not allowed outside? I was going home next month. Now I can't because of $5 dollars? I would never put my life on hold for 5 bucks! My life is good. I have no assault on staff on my packet. If you look at the camera you will see everything. I have spent 60 days in Seg for nothing!
>
> Patrick and Counceller are best friends. They kick it everyday together. Always hanging out together at work. I never pushed Counceller. He told me not to say anything to anyone and 1 seen him get up. Counceller said "Give me 10-15 minutes I'll be good."
>
> All this is a big conspiracy. All this is on purpose. A plan made by them against me.

4

*Id.* at 4.

Disciplinary hearing officer Sgt. Cooke considered this statement, staff reports, witness statements, and the video evidence and found Mr. McKinney guilty. *Id.* at 1. Sgt. Cooke provided the following explanation for the guilty finding:

> Offender story changes with every witness he had spoken to. Facts and video shows offender go back with Counceller, and return moments later. Counceller states that offender pushed him down stairs. Counceller was then found at the bottom of the USD steps with a power washer on him, almost lost consciousness and was removed from facility via ambulance. McKinney never tried to get him help. Offender is guilty of Class A 100.

*Id.* at 1-2.

At the time of the hearing, Mr. McKinney had 457 days of earned credit time. *Id.* at 1. Sgt. Cooke imposed the following sanctions: (1) a 460-day loss of earned credit time; (2) a two-step demotion in credit-earning class; (3) 365 days of disciplinary segregation; and (4) an order of restitution for "all medical associated with incident." *Id.* Sgt. Cooke indicated that these sanctions were imposed in lights of the seriousness of the offense, the frequency/nature of the offense, Mr. McKinney's attitude during the hearing, and the degree to which the violation disrupted/endangered the security of the facility. *Id.*

The disciplinary hearing officer, Sgt. Cooke, has provided an affidavit describing her role in the disciplinary hearing. Dkt. 7-13. Sgt. Cooke states that the hearing was held in a well-lighted area and that Mr. McKinney "was very vocal and had a lot of points to make, so I allowed him the opportunity to state everything he wished." *Id.* at para. 4. Sgt. Cooke also stated that Mr. McKinney did not state during the hearing that he wanted to present a witness statement from Officer Patrick. *Id.* at para. 5.

Mr. McKinney appealed his disciplinary conviction to the Facility Head and the IDOC Final Reviewing Authority. Dkts. 7-7, 7-8. These appeals were denied. *Id.* Following these

appeals, an IDOC Appeal Review Officer modified Mr. McKinney's conviction to A-102 battery, but his sanctions remained the same. Dkt. 7-9. Mr. McKinney then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## III.
## DISCUSSION

Mr. McKinney raises four grounds for relief in his petition. First, he states that the hearing was held in a room with no light. (Dkt. 1, pp. 3-4). He argues this prevented him from presenting witness statements "against C/O Miller and C/O Patrick that show conflict of interest." *Id.* at 3. He also argues that this prevented him from presenting his "statement that I am classified as an A-1R offender, not allowed out of my facility, which demonstrates [Counceller's] attempt to lure me somewhere out of camera view to stage the incident." *Id.* at 4. Second, he challenges the award of restitution. *Id.* Third, he argues that the sanctions imposed were too harsh and did not take into consideration his prior disciplinary history. *Id.* at 5. Fourth, he argues that there is insufficient evidence to sustain his disciplinary conviction. *Id.* at 6.

### A. Ability to Present Exculpatory Evidence

Mr. McKinney argues that his disciplinary hearing was held in a room with no light, which impaired his ability to present exculpatory evidence. He specifically argues that he was unable to present witness statements against Sgt. Miller and Officer Patrick demonstrating their conflict of interest, or his own statement that he was restricted from going outside his facility.

Prisoners have a limited right to present witnesses and evidence in their defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to requests for evidence and may deny requests that threaten institutional safety or requests that are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that

6

are exculpatory. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011).

When Mr. McKinney was notified of the charge against him, he requested video evidence and witness statements from Offender Vann and Sgt. Miller. Dkt. 7-2. Both witness statements were presented at his disciplinary hearing. Dkt. 7-4, p. 1; 7-6, pp. 1, 4; dkt. 7-13, para. 5. There is no evidence that he asked to present any additional witness statements at or before the disciplinary hearing. Dkt. 7-13, para. 5. He was also allowed to present a lengthy allocution informing the disciplinary hearing officer that he was restricted from going outside the facility and arguing that IDOC officials had conspired to fabricate a disciplinary charge against him. Dkt. 7-4, p. 4. To the extent that inadequate lighting was an issue at his disciplinary hearing, Mr. McKinney has not demonstrated that he was prejudiced by this issue in any way. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (harmless error analysis applies to collateral reviews of prison disciplinary proceedings). Accordingly, his request for relief on this ground is **DENIED**.

### B.  Award of Restitution

Mr. McKinney challenges the award of restitution as a sanction for his disciplinary conviction. "[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). "It is the custody itself that must violate the Constitution. Accordingly, prisoners who are not seeking earlier or immediate release are not seeking habeas corpus relief." *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009). In other words, "a habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief." *Id.* Typically,

in the context of prison disciplinary proceedings, this means that in order to be considered "in custody," the petitioner must have been deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001). When such a sanction is not imposed, the prison disciplinary officials are "free to use any procedures it chooses, or no procedures at all." *Id.* at 644.

The award of restitution does not affect the fact or duration of Mr. McKinney's custody. Accordingly, his request for relief on this ground is **DENIED**.

### C. Severity of Sanctions

Mr. McKinney argues that the severity of his sanctions is disproportionate to the seriousness of his offense in light of his relatively minor prison disciplinary history. As mentioned in the previous section, Mr. McKinney may only challenge the sanctions that prolong his period of incarceration. Thus, the Court's review his sanctions is limited to the 460-day loss of earned credit time and the 2-step demotion in credit-earning class.

"[A] federal court will not normally review a state sentencing determination which . . . falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the crime. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

As a general rule, an inmate found guilty of committing a Class A code violation may not be subject to a loss of earned credit time of more than 6 months and may not receive a demotion in credit-earning class of more than 1 step. Dkt. 7-11, p. 38. Where the violation is found to be especially serious, the inmate may receive a loss of earned credit time of up to 365 days and up to a 3-step demotion in credit-earning class. *Id.* at 38-39. IDOC Executive Directive #17-09 provides that "[a]ny adult offender found guilty of a violation of offense code A102, 'Assault/Battery,' . . .

[causing a] bodily injury or serious bodily injury to [a] staff member, volunteer, or visitor shall receive . . . a loss of the entire balance of the offender's accumulated earned credit time." Dkt. 7-12, p. 1.

Executive Directive #17-09 requires the mandatory deprivation of all of Mr. McKinney's accumulated earned credit time. However, neither the IDOC Adult Disciplinary Code, nor Executive Directive #17-09, authorized a deprivation of earned credit time *exceeding* the amount that Mr. McKinney had already accumulated. At the time of the disciplinary hearing, Mr. McKinney had 457 days of accumulated earned credit time, but the disciplinary hearing officer imposed a sanction of 460 days of earned credit time. The sanction therefore violated Mr. McKinney's right to due process. Accordingly, Mr. McKinney's request for relief on this ground is **GRANTED to the extent** that the Court orders the respondent to reduce his loss of earned credit time to 457 days. In all other respects, his request for relief on this ground is **DENIED**.

### D.  Sufficiency of the evidence

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 600, 675 (7th Cir. 2012) ("The some evidence standard is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence standard" is much more lenient than the beyond a reasonable doubt standard. *Moffat*, 288 F.3d at 981.

There is some evidence in the record to support Mr. McKinney's disciplinary conviction. Counceller informed IDOC correctional staff that Mr. McKinney shoved him down the stairs.

Counceller suffered injuries and had to be transported to a local hospital. Mr. McKinney's argument that Counceller and IDOC correctional staff conspired against him to initiate a fabricated disciplinary charge is a request to reweigh the evidence, which the Court may not do. *See Calligan v. Wilson*, 362 F. App'x 543, 545 (7th Cir. 2009) (citing *Hill*, 472 U.S. at 455; *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007)). Accordingly, his request for relief on this ground is **DENIED**.

## IV.
## CONCLUSION

The petition for a writ of habeas corpus is **GRANTED to the extent** that the respondent is ordered to reduce Mr. McKinney's loss of earned credit time to 457 days, which is the maximum loss authorized by the IDOC Adult Disciplinary Code and IDOC Executive Directive #17-09. In all other respects, the petition is **DENIED**. Final judgment in accordance with this Order shall now issue.

The respondent's motion to maintain the video evidence under seal, dkt. [9], is **GRANTED**.

**IT IS SO ORDERED**.

Date:   3/25/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY MCKINNEY
142272
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov